1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11
12

IN RE: COUNTRYWIDE FINANCIAL
CORP. MORTGAGE MARKETING AND
SALES PRACTICES LITIGATION,

_____

13

THIS DOCUMENT RELATES TO:

14

*Dorothy Peralta, et al. v. Countrywide Home*
*Loans, Inc., et al.*, Case No. 10cv0257 DMS
(WMC)

15
16
17
18

CASE NO. 08md1988 DMS (WMC)
          10cv0257 DMS (WMC)

**ORDER GRANTING IN PART**
**AND DENYING IN PART**
**DEFENDANTS' MOTION TO**
**DISMISS FIRST AMENDED**
**COMPLAINT**

19
20

        This matter comes before the Court on Defendants' motion to dismiss Plaintiffs' First

21

Amended Class Action Complaint.  After thoroughly reviewing the parties' briefs and the record on

22

file herein, the Court grants in part and denies in part Defendants' motion.

23

**I.**

24

**PROCEDURAL HISTORY**

25

        This case is part of a multi-district litigation involving states, individuals and several business

26

entities involved in mortgage lending across the country.  This case, in particular, has a unique

27

procedural history going back to May 25, 2007.  On that date, Plaintiff Steven Bigverde, along with

28

Carrie Shaw and Aaron K. Dunn, filed a Complaint against Countrywide Bank FSB, Countrywide

1   Home Loans, Inc., Countrywide Financial Corporation and Treasury Bank, N.A. in the United States

2   District Court for the Central District of California.  On August 6, 2007, Defendants filed a motion

3   to dismiss that Complaint.  Plaintiffs responded by filing a First Amended Complaint on August 28,

4   2007, which Defendants moved to dismiss.  On January 7, 2008, the court granted that motion and

5   gave Plaintiffs leave to file a Second Amended Complaint, which they did.  The Second Amended

6   Complaint added Dorothy Peralta as a Plaintiff, and dropped Ms. Shaw and Mr. Dunn as Plaintiffs.

7   Defendants moved to dismiss the Second Amended Complaint, which the court granted.  The court

8   also gave Plaintiffs leave to file a Third Amended Complaint, which they did.  Defendants thereafter

9   moved to dismiss the Third Amended Complaint, after which Plaintiffs voluntarily dismissed their

10  case.

11      Twenty-nine days later, on June 2, 2009, Plaintiffs filed another case in Alameda Superior

12  Court.  They thereafter filed a First Amended Class Action Complaint ("FAC") on June 18, 2009.  The

13  FAC names Bigverde and Peralta as Plaintiffs, and also names an additional Plaintiff, James Moscoso.

14  On July 17, 2009, Defendants removed the case to the United States District Court for the Northern

15  District of California.  Plaintiffs thereafter moved to remand the case, and Defendants moved for

16  dismissal and to transfer the case to the Central District.  The court denied the motion to remand, and

17  granted the motion to transfer.  Plaintiffs submitted a request to appeal the remand decision to the

18  Ninth Circuit, which granted the request.  While that request was pending, the case was transferred

19  to this Court pursuant to an order from the Judicial Panel on Multidistrict Litigation.

20      After the transfer, the parties filed supplemental briefs in support of and in opposition to the

21  motion to dismiss.  This Court stayed its decision on the motion pending a ruling from the Ninth

22  Circuit on the remand issue.  The Ninth Circuit issued its ruling on April 15, 2010, in which it vacated

23  the order granting the request to appeal and dismissed the appeal as improvidently granted.

## II.

## FACTUAL BACKGROUND

26      Plaintiffs Peralta, Bigverde and Moscoso each entered into an Option Adjustable Rate

27  Mortgage ("ARM") loan with Defendants.  Plaintiffs allege the Notes for these loans are based on a

28  "teaser" interest rate, which ranges from 1% to 3%, and the payment schedule for the first two to five

years of the loan listed in the Truth in Lending Disclosure Statements ("TILDS") is based upon the "teaser" interest rate, even though the "teaser" interest rate adjusts after only one month.  (FAC at ¶17.)  Plaintiffs allege that after the interest rate adjustment, the monthly payment listed in the TILDS is no longer sufficient to pay the interest on the loan, resulting in negative amortization.  (*Id.* at ¶18.)  Plaintiffs allege Defendants knew negative amortization was "certain" to occur, but they failed to disclose that fact to Plaintiffs.  (*Id.* at ¶¶18-20.)  Plaintiffs allege that by the time they learned their loans would negatively amortize, they were locked into the loan by a "draconian" prepayment penalty.  (*Id.* at ¶24.)

These allegations serve as the factual basis for Plaintiffs' legal claims, which allege (1) fraudulent omissions, (2) a violation of California Business & Professions Code § 17200, (3) breach of contract, and (4) tortious breach of implied covenant of good faith and fair dealing.

**III.**

**DISCUSSION**

Defendants raise numerous arguments in support of their motion to dismiss the FAC.  First, they argue Plaintiffs' claims are preempted.  Second, they assert Plaintiffs' claims are time-barred.  Third, Defendants contend Plaintiffs have failed to allege facts to support each element of their claims.

**A.    Standard of Review**

In two recent opinions, the Supreme Court established a more stringent standard of review for 12(b)(6) motions.  *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).  In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are not entitled to the assumption of truth."

1   *Id.* at 1951.  It then considered "the factual allegations in respondent's complaint to determine if they

2   plausibly suggest an entitlement to relief."  *Id.* at 1951.

3   **B.      Statute of Limitations**

4          Defendants argue several of Plaintiffs' claims should be dismissed as untimely.  Specifically,

5   they assert all of the Plaintiffs' fraud and bad faith claims are untimely, and Bigverde's unfair

6   competition and breach of contract claims are untimely.

7          1.      Fraudulent Omissions

8          The statute of limitations on Plaintiffs' fraudulent omissions claims is three years.  *See* Cal.

9   Code Civ. P. § 338(d).  Defendants assert Plaintiffs' claims accrued, at the latest, on the date the loans

10  closed, or April 7, 2005, for Bigverde, August 19, 2005, for Peralta, and September 12, 2005, for

11  Moscoso.  The present claims were filed on June 2, 2009, more than three years after those dates.

12  Therefore, Defendants assert these claims are untimely.

13         Plaintiffs dispute this argument, and rely on 28 U.S.C. § 1367(d) in support.  Section 1367

14  governs supplemental jurisdiction in the federal courts, and subsection (d) states:

15         The period of limitations for any claim asserted under subsection (a), and for any other
           claim in the same action that is voluntarily dismissed at the same time as or after the
16         dismissal of the claim under subsection (a), shall be tolled while the claim is pending
           and for a period of 30 days after it is dismissed unless State law provides for a longer
17         tolling period.

18  28 U.S.C. § 1367(d).  Plaintiffs argue they timely filed their claims when they filed the Central District

19  case.[1]  Relying on section 1367(d), Plaintiffs assert that filing tolled the statute of limitations on their

20  claims while that case was pending and for thirty days thereafter.  Because Plaintiffs filed their state

21  court complaint within those thirty days, they contend their claims are timely.

22         The problem with Plaintiffs' argument is section 1367(d) is limited to dismissals under section

23  1367.  *See Beck v. Prupis*, 162 F.3d 1090, 1099-1100 (11th Cir. 1998) (stating dismissal under section

24  1367 triggers tolling provision of section 1367(d)); *Neal v. Dist. of Columbia*, 131 F.3d 172, 175 (D.C.

25

26         [1]  The Court notes that although the original Central District complaint was filed on May 25,
    2007, it did not include Plaintiffs Peralta and Moscoso.  Peralta was not added to the case until the
27  Second Amended Complaint was filed on January 28, 2008, and Moscoso was not added to the case
    until the state court complaint was filed on June 2, 2009.  The different filing dates, however, do not
28  affect the outcome of the Court's analysis.  Even if the Court gives all of the Plaintiffs the benefit of
    the earliest filing date of May 25, 2007, their claims are still untimely for the reason discussed below.

Cir. 1997) (stating claim that is dismissed for lack of supplemental jurisdiction is tolled pursuant to section 1367(d)). Here, Plaintiffs' claims were not dismissed pursuant to section 1367, but rather Plaintiffs voluntarily dismissed their case pursuant to Federal Rule of Civil Procedure 41(a). Thus, section 1367(d) does not save Plaintiffs' fraudulent omissions claims. Because those claims were not filed within the three-year statute of limitations, the Court dismisses them as untimely.

> 2.    Unfair Competition/Breach of Contract

Defendants do not argue Peralta or Moscoso's unfair competition and breach of contract claims are untimely, but they do argue Bigverde's unfair competition and breach of contract claims are untimely. The statute of limitations on these claims is four years. *See* Cal. Bus. & Prof. Code § 17208 (unfair competition); Cal. Code Civ. P. § 337 (breach of contract). As mentioned above, Defendants assert Bigverde's unfair competition and breach of contract claims accrued on the date his loan closed, or April 7, 2005. Because the present claims were not filed until June 2, 2009, Defendants contend they are untimely.

Plaintiffs rely on the section 1367 argument discussed above to defeat Defendants' argument. For the same reasons, the Court rejects that argument here, and grants Defendants' motion to dismiss Bigverde's unfair competition and breach of contract claims as untimely.

> 3.    Bad Faith

Finally, Defendants argue all of the Plaintiffs' bad faith claims are untimely. The statute of limitations on these claims is two years. *Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 467 n. 19 (2007); *Richardson v. Allstate Ins. Co.*, 117 Cal. App. 3d 8, 13 (1981). As with the claims discussed above, Defendants argue these claims accrued, at the latest, on the dates the loans closed. Moscoso's loan was the last to close on September 12, 2005. Therefore, Plaintiffs should have filed these claims on or before September 12, 2007. As explained above, Plaintiffs did not file their claims until June 2, 2009, more than one year later. Accordingly, the Court grants Defendants' motion to dismiss the bad faith claims as untimely.

**C.    Preemption**

In light of the discussion above, the only remaining claims are Plaintiff Peralta and Moscoso's claims for unfair competition and breach of contract. Defendants argue Peralta's unfair competition

claim is preempted by the Truth in Lending Act ("TILA"), and Moscoso's unfair competition and breach of contract claims are preempted by the National Bank Act ("NBA").  Defendants bear the burden of establishing that these claims are preempted.  *Village of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 786 (7th Cir. 2008).

1.   TILA

TILA preempts state laws that "are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency."  15 U.S.C. § 1610(a)(1).  The regulations interpreting TILA provide: "A State law is inconsistent if it requires a creditor to make disclosures or take actions that contradict the requirements of the Federal law."  12 C.F.R. § 226.28(a)(1).

Here, Defendants argue Peralta's unfair competition claim is an attempt to impose additional disclosure requirements on Defendants, therefore the claim is inconsistent with TILA.  However, Defendants fail to show how these additional disclosures contradict the requirements of TILA.  Rather, Plaintiffs' claim appears to be consistent with the overriding purpose of TILA, which is "to promote the 'informed use of credit' by consumers."  *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219-220 (1981) (quoting 15 U.S.C. § 1601).  Accordingly, this argument does not demonstrate preemption.

Defendants also argue this claim is preempted by TILA because it seeks to add to TILA's remedies, extend TILA's statute of limitations, and circumvent the cap on statutory damages for class actions.  Defendants raised this argument in their motion to dismiss another case included in this MDL proceeding.  *See Buckley v. Countrywide Home Loans, Inc.*, Case No. 09cv0064, Docket No. 38.  The Court rejected the argument in that case, and rejects it here for the same reasons.  *See also Quezada v. Loan Center of Cal., Inc.*, No. CIV. 08-177 WBS KJM, 2008 WL 5100241, at *4-5 (E.D. Cal. Nov. 26, 2008).  Although Defendants cite *Zlotnik v. U.S. Bancorp*, No. C 09-3855 PJH, 2009 WL 5178030 (N.D. Cal. Dec. 22, 2009), for the proposition that the UCL conflicts with TILA as it allows relief for TILA violations after TILA's statute of limitations has expired, this Court respectfully declines to follow *Zlotnik*, and instead finds the reasoning of *Quezada* persuasive.  Accordingly, the Court declines to dismiss Peralta's claim on the ground it is preempted by TILA.

/ / /

/ / /

- 6 -

2.      The NBA

Turning to Plaintiff Moscoso, he obtained his loan from Countrywide Bank, N.A.  As a result, Defendants argue Moscoso's unfair competition and breach of contract claims are preempted by the NBA.

The NBA "vests national banks ... with authority to exercise 'all such incidental powers as shall be necessary to carry on the business of banking.'"  *Martinez v. Wells Fargo Home Mortgage, Inc.*, 598 F.3d 549, 554-55 (9th Cir. 2010) (quoting 12 U.S.C. § 24 (Seventh)).  "Real estate lending is expressly designated as part of the business of banking."  *Id.* at 555 (citing 12 U.S.C. § 371(a)).  The Office of the Comptroller of the Currency ("OCC") is charged with administering the NBA, and "has the primary responsibility for the surveillance of the 'business of banking' authorized by the Act."  *Id.*  In fulfilling that responsibility, the OCC has issued several regulations, which "possess the same preemptive effect as the Act itself."  *Id.*

The regulation relevant to this case is 12 C.F.R. § 34.4(a).  This regulation provides:

a national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning: ...

(4) The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; ...

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents; [and]

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages[.]

12 C.F.R. § 34.4 (a)(4), (9), (10).  Defendants argue Moscoso's unfair competition claim is predicated on their "failure to disclose information in connection with and about the terms of their loans, including their payment schedule and the possibility of negative amortization."  (Mem. of P. & A. in Supp. of Mot. at 9.)  Accordingly, Defendants argue the claim is preempted by sections 34.4(a)(4) and (9).   Defendants assert Moscoso's breach of contract claim alleges Defendants "misapplied [Moscoso's] monthly payments in breach of the 'Note and [TILDS]' because the Notes required positive amortization."  (*Id.*)  Thus, Defendants argue the claim is preempted by section 34.4(a)(10).

Plaintiffs do not dispute Defendants' characterization of Moscoso's claims or the preemptive effect of the regulations. Indeed, case law supports Defendants' position. *See O'Donnell v. Bank of America*, No. C-07-04500 RMW, 2010 WL 934153, at *4-5 (N.D. Cal. Mar. 15, 2010) (finding unfair competition claim based on failure to disclose negative amortization, applicable interest rates, and payment schedules preempted by NBA). Instead, Plaintiffs argue that to the extent the foregoing regulations preempt Moscoso's claims, they are unlawful.

In support of this argument, Plaintiffs rely on *Cuomo v. The Clearing House Ass'n, L.L.C.*, ___ U.S. ___, 129 S.Ct. 2710 (2009). In *Cuomo*, the Court decided whether an OCC regulation "purporting to pre-empt state law enforcement can be upheld as a reasonable interpretation of the National Bank Act." *Id.* at 2715. The NBA provision at issue concerned "visitorial powers," and the regulation at issue set out a definition of that term. Relying on the regulation, the OCC brought suit to enjoin the Attorney General of the State of New York from collecting information from several national banks about their lending practices. The district court granted the injunction, the court of appeal affirmed, and the Supreme Court reversed. It examined the historical definition of "visitorial powers," and drew a distinction between those powers and the power to enforce state law. Because the regulation did not recognize that distinction, and thus prevented the states from enforcing their laws, the Court found it was not a reasonable interpretation of the NBA.

Notably, Plaintiffs fail to cite any case law supporting their argument that the regulation at issue here is similarly unreasonable. Indeed, Plaintiffs fail to undertake any sort of analysis of the regulation compared with the statute itself, and fail to offer any explanation of how the regulation at issue is an unreasonable interpretation of the NBA. They simply argue that because the Court found the regulation at issue in *Cuomo* was unreasonable, this Court should find the regulation at issue here unreasonable, as well. Absent any authority, however, the Court declines to do so. Instead, the Court joins the United States District Court for the Northern District of California in finding that Moscoso's unfair competition claim is preempted by the NBA. *See O'Donnell*, 2010 WL 934153, at *4-5.

Moscoso's breach of contract claim, however, is not preempted. Although that claim arguably concerns Defendants' servicing of the mortgage, specifically, their allocation of payments to principal and interest, the legal basis for the claim is the contract as opposed to a state law. In other words,

Plaintiffs do not allege Defendants' conduct is in violation of a state law.  Rather, they allege Defendants have breached their contract with Mr. Moscoso.  Under these circumstances, Moscoso's breach of contract claim is not preempted by the NBA.  *See* 12 C.F.R. § 34.4(b) ("State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers: (1) Contracts[.]")

**D.     Unfair Competition**

Turning to Peralta's unfair competition claim, Defendants argue this claim should be dismissed because (1) Plaintiff has failed to plead facts sufficient to support her allegation of unlawful conduct, (2) Plaintiff has failed to allege a nexus between the unfair conduct and an affirmative public policy, and (3) Plaintiff has (a) failed to allege any fraudulent conduct, (b) failed to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b), and (c) failed to allege reliance.

As to the "unlawful" prong of section 17200, the Court finds Plaintiff has set forth facts sufficient to support her claim.  Specifically, Plaintiff alleges "Defendants uniformly failed to disclose and omitted material information that was known only to themselves and that could not reasonably have been discovered by Plaintiffs and Class Members as set forth in the preceding counts."  (FAC at ¶86.)  That information includes:

> (i) the actual interest rate on the note(s); (ii) that the initial interest rate disclosed in the Note would last only one month, was discounted, and was substantially lower than the actual interest that Plaintiffs and Class Members would be charged on the Notes; (iii) that the amount of monthly payments provided for the in the Note and for the first 2-5 years in the [TILDS] was based entirely on the 'teaser rate; and (iv) that, after one month the scheduled monthly payment would not be sufficient to even pay the interest being charged, let alone amortize the loan, so that each month the principal balance would increase even if the payments were made as scheduled.

(*Id.* at ¶1.)  Plaintiff alleges this conduct violated California Civil Code §§ 1572 (Actual Fraud), 1573 (Constructive Fraud), and 1710 (Deceit).  (*Id.* at ¶91.)  These allegations are sufficient to withstand Defendants' motion to dismiss.[2]

---

[2] Defendants also argue, in perfunctory fashion, that they are entitled to a safe harbor from Plaintiffs' unfair competition claim because they complied with TILA. (*See* Mem. of P. & A. in Supp. of Mot. at 21.)  The Court declines to address that argument here because Defendants have failed to fully analyze the issue.

Next, Defendants argue Plaintiff has failed to state a claim under the "unfair" prong of section 17200 because she has failed to "plead the required nexus between the allegedly unfair conduct and an articulated public policy[.]"  (Mem. of P. & A. in Supp. of Mot. at 22.)  In support of this argument, Defendants rely on *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999).  In that case, the California Supreme Court set out a new requirement for "unfair" acts or practices under section 17200, namely, "that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Id.* at 186-87.  However, it is unclear whether that requirement applies to *consumer* actions under section 17200.  *See Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 735-36 (9th Cir. 2007) (stating California's unfair competition law, as it applies to consumer suits, is "in flux" after *Cel-Tech*).  Even if it did, Plaintiff has satisfied the standard, at least at the pleading stage.  For instance, Plaintiff does allege Defendants' conduct "gave [Defendants] an unfair competitive advantage over their competitors."  (FAC at ¶90.)  She also "tethers" her claim to the legislative policies against fraud and deceit.  (*See id.* at ¶91.)  Accordingly, the Court denies Defendants' motion to dismiss the "unfair" prong of Plaintiff's claim.

The "fraud" prong of Plaintiff's claim, however, is subject to dismissal.  Federal Rule of Civil Procedure 9(b) "applies to UCL claims sounding in fraud," *Baldain v. Am. Home Mortgage Servicing, Inc.*, No. CIV. S-09-0931 LKK/GGH, 2010 WL 56143, at *8 (E.D. Cal. Jan. 5, 2010), and Plaintiff has not satisfied those pleading requirements here.  In contravention of *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003), Plaintiff has not pleaded the who, when, where or how of the misconduct charged as it relates specifically to her loan.  Accordingly, the Court dismisses the "fraud" prong of Plaintiff's unfair competition claim.

**E.     Breach of Contract**

The only remaining issue is whether Plaintiffs Peralta and Moscoso have stated a claim for breach of contract.  Defendants argue Plaintiffs have failed to identify any contract term they have breached, and further assert that the contract contradicts Plaintiffs' allegations.

According to the allegations in the FAC, the contract required Defendants "to apply Plaintiffs' and Class Members [sic] monthly payments to both principal and interest on a fully-amortized basis

1  (*i.e.*, so that negative amortization would not occur) as long as those payments were in the amount

2  reflected in the Note and the TILDS." (FAC at ¶105.) Plaintiffs also allege the contract prohibited

3  Defendants from imposing or charging a payment amount that differed from that identified in the Note

4  and TILDS. (*Id.*) Plaintiffs also allege Defendants promised Plaintiffs a certain interest rate on their

5  loans, and then "switched the interest rate charged on the loans to a much higher rate than the one they

6  promised to Plaintiffs[.]" (*Id.*) Defendants are correct that Plaintiffs fail to identify the specific

7  portions of the contract that set out these obligations, and are also correct that the contract does not

8  support Plaintiffs' claims.

9      In contrast to Plaintiffs' allegations, the Note specifically states the borrowers payments "will

10  be applied to interest before Principal." (FAC, Ex. 3 at 2.) The Note also states the borrowers

11  "monthly payment may change as required by Section 3(D) below beginning on the first day of

12  NOVEMBER, 2006, and on that day every 12th month thereafter." (*Id.*) Likewise, the Note states

13  "[t]he interest rate I will pay may change on the first day of NOVEMBER, 2005, and on that day every

14  month thereafter." (*Id.* at 1.) Plaintiffs argue the contract is ambiguous on these points, but the

15  portions of the contract they cite do not support this argument.

16      Based on the language of the contracts themselves, Plaintiffs have failed to state a valid breach

17  of contract claim. Accordingly, the Court grants Defendants' motion to dismiss these claims.

18                                              **IV.**

19                                         **CONCLUSION**

20      In light of the above, Defendants' motion to dismiss is granted in part and denied in part.

21  Specifically, the Court grants the motion to dismiss (1) all of Plaintiff Bigverde's claims as untimely,

22  (2) Plaintiffs Peralta and Moscoso's fraudulent omission and bad faith claims as untimely, (3) Plaintiff

23  Moscoso's unfair competition claim as preempted by the NBA, (4) Plaintiff Peralta's unfair

24  competition claim under the "fraud" prong of section 17200, and (5) Plaintiffs Peralta and Moscoso's

25  / / /

26  / / /

27  / / /

28  / / /

breach of contract claims.  As to Plaintiff Peralta's unfair competition claim under the "unlawful" and "unfair" prongs of section 17200, Defendants' motion to dismiss is denied.

**IT IS SO ORDERED**.

DATED:  May 14, 2010

_____
HON. DANA M. SABRAW
United States District Judge